1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8

9

10   KENSHAWN J. MAXEY,                    )
                                          )
11            Petitioner,                  )        3:09-cv-00012-ECR-VPC
                                          )
12   vs.                                   )        **ORDER**
                                          )
13   WILLIAM DONAT, *et al.*,              )
                                          )
14            Respondents.                 )
     ——————————————————————————/

15

16         This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a

17   Nevada state prisoner represented by counsel.  This matter comes before the Court on the merits of

18   the petition.

19   **I. Background and Procedural Background**

20         The underlying offense in this habeas petition arose from a botched robbery at a Las Vegas

21   tavern, where petitioner shot and killed a bartender and his co-conspirator.  (Exhibit 37, at pp. 1-2).[1]

22   An indictment was filed against petitioner in the Eighth Judicial District Court of Nevada on June 5,

23   1998.  (Exhibit 1).  An amended indictment was filed June 30, 1998.  (Exhibit 2).  The charges

24

25   ———————————————

26         [1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 9, 10, 11, 12,
     30, and 36-42.

included two counts of murder.  A notice of intent to seek the death penalty was filed August 3, 1998.  (Exhibit 3).  A supplement to that notice was filed March 5, 1999.  (Exhibit 4).

Several pre-trial motions were addressed by the district court on December 15, 1999. (Exhibit 5).  A pretrial hearing was held on January 10, 2000.  (Exhibit 6).  Just prior to trial, a second amended information was filed, charging petitioner with the following: burglary while in possession of a firearm, conspiracy to commit robbery, robbery with the use of a deadly weapon, murder with the use of a deadly weapon, second degree kidnapping with the use of a deadly weapon, and battery with the use of a deadly weapon.  (Exhibit 7).  Trial was held from January 20, 2000, through February 7, 2000.  (Exhibits 8-23).

Petitioner was convicted of the following: Count I, burglary while in possession of a firearm; Count II, conspiracy to commit robbery; Count III, robbery with the use of a deadly weapon; Count IV, robbery with the use of a deadly weapon; Count V, murder with the use of a deadly weapon; Count VI, murder with the use of a deadly weapon; Count VIII, second degree kidnapping with the use of a deadly weapon; and Count XIV, battery with the use of a deadly weapon.  (Exhibit 24).

The jury returned the results of the penalty hearing on February 8, 2000.  (Exhibit 25).  As to the murder convictions, the jury determined that the mitigating circumstances outweighed the aggravating circumstances, and imposed a sentence of life in prison without the possibility of parole. A special verdict form was filed with the court.  (Exhibit 26).  The jury instructions (Exhibit 27) and penalty phase instructions (Exhibit 28) were made part of the record.

Sentencing was held on April 24, 2000.  (Exhibit 29).  All counts were to run consecutive to one another.  (*Id.*)  A notice of appeal was filed, but before the appeal proceeded, petitioner filed a motion for a new trial.  (Exhibits 30 and 31).  On April 24, 2000, the motion for a new trial was denied by the trial court.  (Exhibit 33).

On July 16, 2001, petitioner filed his opening brief on appeal in the Nevada Supreme Court. (Exhibit 34).  An answering brief was filed on July 21, 2001.  (Exhibit 35).  By order filed

2

1  September 9, 2002, the Nevada Supreme Court affirmed in part and reversed in part, remanding the

2  case for correction of petitioner's sentence.  (Exhibit 37).  The trial court had enhanced two counts

3  with a "deadly weapon" modifier that could not be enhanced, and did not add the modifier to one of

4  the murder counts.  (Exhibit 37, at p. 8).  The corrections affected the sentence structure, but did not

5  delete any of the counts on which the jury convicted.  An amended judgment of conviction was filed

6  on November 13, 2002.  (Exhibit 38).

7  　　　　On August 14, 2003, petitioner filed a habeas petition and memorandum of points and

8  authorities in state court.  (Exhibits 39 and 40).  The State filed its opposition to the petition on

9  August 21, 2003.  (Exhibit 41).  A reply was filed on October 8, 2003.  (Exhibit 42).  The trial court

10  held several hearings on the habeas petition.  (Exhibits 43-61).  The hearings culminated in a medical

11  report being filed on October 12, 2006, which noted that petitioner's brain scan results were

12  "unremarkable."  (Exhibit 62).  The petition was denied by the state district court in a written order

13  filed October 26, 2006.  (Exhibit 63).

14  　　　　Petitioner filed a notice of appeal from the denial of his state habeas petition.  (Exhibit 64).

15  Petitioner filed an opening brief with the Nevada Supreme Court on May 15, 2007.  (Exhibit 65).  A

16  reply brief was filed on July 18, 2007.  (Exhibit 67).  Petitioner filed a motion for leave to file a

17  supplemental brief and supplemental authorities on October 3, 2007.  (Exhibit 68).  On October 29,

18  2007, the Nevada Supreme Court granted the motion.  (Exhibit 69).  A supplemental responding

19  brief was filed on October 29, 2007.  (Exhibit 70).  On September 25, 2008, the Nevada Supreme

20  Court filed its order of affirmance.  (Exhibit 71).

21  　　　　This Court received the federal petition on January 9, 2009.  (ECF No. 1).  Petitioner's

22  application to proceed *in forma pauperis* was granted, and the petition was filed on March 30, 2009.

23  (ECF No. 4).  Respondents filed a motion to dismiss on July 9, 2009.  (ECF No. 9).  On July 24,

24  2009, a notice of appearance and motion for appointment of counsel was filed by attorney Lisa

25  Rasmussen on behalf of petitioner.  (ECF No. 14).  By order filed July 27, 2009, the Court granted

26

petitioner's motion for the appointment of counsel.  (ECF No. 17).  Attorney Lisa Rasmussen was appointed as petitioner's counsel in these habeas proceedings and was given an opportunity to file an amended petition.  (ECF No. 19).  Through counsel, petitioner filed a response to the motion to dismiss on November 6, 2009, in which petitioner's counsel indicated that petitioner had elected not to file an amended petition.  (ECF No. 22, at p. 2, n.1).  On March 15, 2010, this Court entered an order granting in part, and denying in part, respondents' motion to dismiss the petition.  (ECF No. 29).  The Court ordered the following:  Ground One was dismissed for failure to state a federal claim; Ground Two was allowed to proceed in its entirety; Ground Three was allowed to proceed in its entirety; the portions of Grounds Four and Five that pertain to the ineffective assistance of counsel were allowed to proceed.  The remainder of Grounds Four and Five were dismissed as procedurally barred.  (ECF No. 29).

Respondents filed an answer to the surviving grounds of the petition on April 26, 2010. (ECF No. 30).  The answer was accompanied by Exhibits 72, 73, and 74.  On June 28, 2010, petitioner filed a motion to amend the petition with an Eighth Amendment claim based on the decision of *Graham v. Florida*, 130 S.Ct. 2011 (2010).  This Court denied the motion to amend, ruling: "The *Graham* decision specifically prohibits the imposition of a life without parole sentence on a juvenile for non-homicide offenses, and therefore, it is not applicable to petitioner in the instant case, who was convicted of a homicide.  Because the *Graham* decision does not provide the basis for an Eighth Amendment claim, petitioner's motion to amend is denied."  (ECF No. 44, at pp. 2-3).  Petitioner's reply brief was filed on July 26, 2010.  (ECF No. 43).  Exhibits D-L accompanied the reply.  (ECF Nos. 36-42).

## II.  Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted

4

1
2
3
4
5
6

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7    The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

8 in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

9 to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court

10 decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

11 § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

12 Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from

13 a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

14 Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

15 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

16    A state court decision is an unreasonable application of clearly established Supreme Court

17 precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

18 governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

19 principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams,*

20 529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

21 than merely incorrect or erroneous; the state court's application of clearly established federal law

22 must be objectively unreasonable.  *Id.* (quoting *Williams,* 529 U.S. at 409).

23    In determining whether a state court decision is contrary to, or an unreasonable application of

24 federal law, this Court looks to the state courts' last reasoned decision.  *See Ylst v.*

25
26

5

*Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).  Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**III.  Discussion**

   **A.  Ground Two**

   Petitioner alleges the following in Ground Two of the petition:

> Mr. Maxey was denied his rights to due process, a fair trial, and to be free from cruel and unusual punishment, and to his right to protection by the State; when the State violated its duty to protect its ward and created a conflict of interest when seeking to execute its own ward.  He was also denied his right to effective assistance of counsel, when counsel failed to raise the issue.  Additionally, the trial court erred in finding that the issue was procedurally barred and failing to rule on the merits of the issue.

(Petition, ECF No. 4, at p. 8).

   **1.  Due Process/State's Duty to Protect Ward/Conflict of Interest/Fair Trial**

   Petitioner claims that the State "violated its duty to protect its ward and created a conflict of interest when seeking to execute its own ward." (*Id.*).  Petitioner was born November 5, 1980, and was 17 years old at the time of the commission of the crimes in May of 1998.  In 1990, when petitioner was age 10, he was declared a ward of the State, as his mother was deceased and his father was incarcerated and had a history of abusiveness.  (ECF No. 41, Exhibit I).  Petitioner was placed with his maternal grandparents and/or his aunt, where he presumably lived until age 17, when he committed the crimes underlying the conviction that he now challenges.  (*Id.*).  The State filed a notice of intent to seek the death penalty on August 3, 1998.  (Exhibit 3).  A supplement to that notice was filed on March 5, 1999.  (Exhibit 4).  Petitioner's trial was in January 2000.  (Exhibits 8-23).

   Petitioner argues that it was contrary to Nevada's policies of child protection for the State to seek the death penalty against petitioner when he was still a ward of the state at age 17.  Petitioner

cites to NRS 432.039(3) and NRS 159 *et seq.* regarding the State's responsibilities to a person once they are declared a ward of the State.  (ECF No. 4, at pp. 14-15).  To the extent petitioner's claim relies on Nevada state law, and the Nevada Supreme Court determined that petitioner was not entitled to relief on this claim (Exhibit 71), the question of the duties owed to petitioner by the State is a matter of state law, not federal law.  *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Petitioner also cites to the Seventh Circuit case of *K.H. v. Morgan*, 914 F.2d 846 (7th Cir. 1990) and *Youngberg v. Romero*, 457 U.S. 307 (1982), for the proposition the State has a duty ensure the safety of its wards.  In *K.H. v. Morgan*, a civil rights suit was brought against child welfare workers, on behalf of an abused child who had been removed from the custody of her parents and placed with several different abusive foster parents in the course of the child's young life.  *K.H. v. Morgan*, 914 F.2d at 848.  The Seventh Circuit ruled that the State, having removed the child from the custody of her parents, had assumed at least a limited responsibility for her safety, and could not place her in a position of danger deliberately or without justification.  *Id.* at 848-49.  The Court held that child welfare workers were not entitled to qualified immunity from liability for placing the child in the custody of foster parents that the State knew or suspected to be child abusers.  *Id.* at 852.  The Court first notes that *K.H. v. Morgan* is a decision of the Seventh Circuit Court of Appeals, and is not clearly established federal authority as determined by the United States Supreme Court, for purposes of the AEDPA.  *See* 28 U.S.C. § 2254(d).  Additionally, *K.H. v. Morgan* is inapplicable to this case, not only because the facts of the ward in question are vastly different, but because the case was a civil rights action and concerned the availability of qualified immunity for the defendants.  The *K.H. v. Morgan* decision offers no support for petitioner's argument that a conflict of interest arises where the State  seeks the death penalty against a 17-year-old ward of the State standing trial for first degree murder, as in the present case.

The other case heavily relied upon by petitioner, *Youngberg v. Romeo*, 457 U.S. 307 (1982), was a civil rights action against the State, brought on behalf of a mentally retarded individual who

had been involuntarily institutionalized.  The Court recognized that where an individual is "institutionalized and wholly dependent on the State," the State has a duty to provide reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and minimally adequate training or habilitation.  *Youngberg v. Romeo*, 457 U.S. at 317-25.  This duty stems from the institutionalized person's constitutionally protected liberty interests under the Due Process Clause of the Fourteenth Amendment.  *Id.* at 314-18.  In the instant case, petitioner was not "institutionalized and wholly dependent on the State" prior to his arrest, merely by virtue of his being a ward of the State.  Petitioner, while he was a ward of the State, lived with his aunt and was subject to monitoring by the State.  (ECF No. 41, Exhibit I; Exhibit 40).  The underlying facts of the crimes for which petitioner was convicted demonstrate that he was not restricted or "wholly dependent on the State": Petitioner met with his friends all night during which time he perpetrated robbery and murder.  The Court rejects petitioner's reliance on *Youngberg v. Romeo* for the proposition that State "violated its duty to protect its ward and created a conflict of interest when seeking to execute its own ward." (ECF No. 4, at p. 8).  Petitioner has failed to cite to applicable authority, as determined by the United States Supreme Court, to support his argument that the State is prohibited from seeking the death penalty against one of its wards.

The Court notes that, in his reply brief, petitioner mentions *Roper v. Simmons*, 543 U.S. 551 (2005), in which the United States Supreme Court held that persons who committed murder when they were under the age of 18 cannot be subjected to the death penalty.  Petitioner was not sentenced to the death penalty, but rather, a term of years.  As such, the holding of *Roper* would not have applied to petitioner's case.  In the reply brief, petitioner acknowledges that *Roper v. Simmons* does not apply to his case.  (ECF No. 43, at p. 28).

Moreover, petitioner cannot demonstrate that he suffered prejudice as a result of the State seeking the death penalty at his trial.  In the context of petitioner's due process claim, the Court looks to whether an alleged error "had a substantial and injurious effect or influence in determining

8

the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  First, petitioner did not

receive the death penalty, he received a sentence of life in prison without the possibility of parole.

(Exhibits 25, 26, 29 & 38).  When the Nevada Supreme Court rejected petitioner's claim, in the

context of ruling on the related claim of ineffective assistance of counsel, it ruled that: "Maxey was

not sentenced to death, and his claim is therefore moot."  (Exhibit 71, at p. 3).  Petitioner also

asserted in his appeal, as he does in the instant petition, that although he was not sentenced to death,

he is entitled to relief because the "death qualified" jury panel was more prone to imposing a harsher

sentence.  The Nevada Supreme Court rejected this claim, citing *Lockhard v. McCree*, 476 U.S. 162,

178 (1986), in which the United States Supreme Court has held that a "death qualified" jury is

constitutionally valid, rejecting an allegation that a death qualified jury is impartially inclined to

convict.  (Exhibit 71, at p. 3).  Petitioner cannot demonstrate prejudice because he cannot

demonstrate that the death qualified jury "had a substantial and injurious effect or influence in

determining the jury's verdict."  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Lockhard v.*

*McCree*, 476 U.S. 162, 178 (1986).

Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling

was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the United States Supreme Court, or that the ruling was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding.  This Court

denies habeas relief on petitioner's claims that: his due process rights were violated; that the State

violated its duty to protect its ward and created a conflict of interest; and that he is entitled to relief

because the "death qualified" jury panel was more prone to imposing a harsher sentence.

### 2.  Ineffective Assistance of Counsel Claim

Petitioner alleges ineffective assistance of counsel because his attorney did not raise claims

that his due process rights were violated, that the State violated its duty to protect its ward and

1    created a conflict of interest, and that he is entitled to relief because the "death qualified" jury panel

2    was more prone to imposing a harsher sentence.  (ECF No. 4, at pp. 8-16).

3         Ineffective assistance of counsel claims are governed by the two-part test announced in

4    *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a

5    petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the

6    attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the

7    Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v.*

8    *Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish

9    ineffectiveness, the defendant must show that counsel's representation fell below an objective

10   standard of reasonableness.  *Id.*  To establish prejudice, the defendant must show that there is a

11   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

12   would have been different.  *Id.*  A reasonable probability is "probability sufficient to undermine

13   confidence in the outcome."  *Id.*  Additionally, any review of the attorney's performance must be

14   "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

15   order to avoid the distorting effects of hindsight.  *Strickland,* 466 U.S. at 689.  It is the petitioner's

16   burden to overcome the presumption that counsel's actions might be considered sound trial strategy.

17   *Id.*

18        Ineffective assistance of counsel under *Strickland* requires a showing of deficient

19   performance of counsel resulting in prejudice, "with performance being measured against an

20   'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

21   *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

22   ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

23   to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

24   5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

25   reasonable professional assistance.  *Id.*

26

10

1   The United States Supreme Court recently described federal review of a state supreme court's

2   decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*,

3   131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The

4   Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . .

5   through the "deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover,

6   federal habeas review of an ineffective assistance of counsel claim is limited to the record before the

7   state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S.Ct. at 1398-1401.

8   Petitioner alleges ineffective assistance of counsel because his attorney did not raise claims

9   that his due process rights were violated, that the State violated its duty to protect its ward and

10   created a conflict of interest, and that he is entitled to relief because the "death qualified" jury panel

11   was more prone to imposing a harsher sentence. The Nevada Supreme Court considered this claim

12   and ruled:

> Maxey first claims that his trial counsel was ineffective for failing to argue that because he was a ward of the State at the time of trial, the State violated its duty to protect him and created a conflict of interest when it sought the death penalty. Maxey was not sentenced to death, and his claim is therefore moot. However, he argues that despite the fact that he was not sentenced to death, he is entitled to relief because allowing the State to seek the death penalty resulted in a "death qualified" jury panel that was not impartial, but was more prone to convict and to imposing harsher sentences. We have previously held that a "death qualified" jury meets constitutional standards. In addition, the United States Supreme Court has considered such arguments and concluded that such a view of jury impartiality is "both illogical and hopelessly impractical." [Citing *Lockhart v. McCree*, 476 U.S. 162, 178 (1986)]. We conclude that the district court did not err in summarily denying Maxey's claim.

21   (Exhibit 71, at p. 3) (footnotes omitted). The Nevada Supreme Court cited to and applied the correct

22   federal standard for ineffective assistance of counsel claims, *Strickland v. Washington*, 466 U.S. 668

23   (1984). (Exhibit 71, at p. 3). The Nevada Supreme Court further applied the correct federal standard

24   in *Lockhart v. McCree*, 476 U.S. 162, 178 (1986), in which the United States Supreme Court held

25   that a "death qualified" jury is constitutionally valid, rejecting an allegation that a death qualified

26

11

jury is impartially inclined to convict.  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Counsel's performance did not fall beyond an objective standard of reasonableness under prevailing norms.  Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis, as he has not shown that, but for the alleged errors of counsel, the outcome of the trial would have been different.  Neither trial nor appellate counsel were ineffective for failing to raise claims that petitioner's due process rights were violated, that the State violated its duty to protect its ward and created a conflict of interest, and that he is entitled to relief because the "death qualified" jury panel was more prone to imposing a harsher sentence, because each of these claims lack merit, as discussed above.  Counsel is not ineffective for failing to raise meritless issues, and counsel has no constitutional duty to raise every non-frivolous issue requested by the client.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  This Court denies habeas relief on petitioner's claim of ineffective assistance of counsel.

### 3. Eighth Amendment Claim

Petitioner alleges that his right to be free from cruel and unusual punishment under the Eighth Amendment was violated because the State sought the death penalty in his case.  (ECF No. 4, at p. 8).

The petition contains no citation to any legal authority supporting the contention that petitioner's Eighth Amendment rights were violated because the State sought the death penalty against him.  In the reply brief, petitioner cites *Graham v. Florida*, 130 S.Ct. 2011, 2034 (2010), in which the United States Supreme Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide."  (ECF No. 43, at

12

pp. 29-30).  This Court previously denied petitioner's motion to amend the petition to add an Eighth

Amendment claim under *Graham v. Florida*, specifically ruling: "The *Graham* decision specifically

prohibits the imposition of a life without parole sentence on a juvenile for non-homicide offenses,

and therefore, it is not applicable to petitioner in the instant case, who was convicted of a homicide.

Because the *Graham* decision does not provide the basis for an Eighth Amendment claim,

petitioner's motion to amend is denied."  (ECF No. 44, at pp. 2-3).  As such, the Court rejects

petitioner's reliance on *Graham v. Florida*, as it is inapplicable to the instant case.  The Court denies

habeas relief as to petitioner's claim of an Eighth Amendment violation.  Moreover, habeas relief is

denied as to the entirety of Ground Two.

### B. Ground Three

Ground Three appears as follows in the petition:

> Mr. Maxey was denied his constitutional rights to due process, a fair
> trial, and a jury trial, when the jury was not adequately instructed on
> the elements of first degree murder and therefore did not make a
> determination on all elements of the offense, nor make a reliable
> distinction between first and second degree murder.  He was also
> denied his right to equal protection of the laws when he was refused
> the benefit of adequate instruction which was afforded to those tried
> both before and after him; and to the effective assistance of counsel
> when counsel failed to adequately raise this issue on federal
> constitutional grounds.  The habeas court erred in failing to address
> this issue, and in denying an evidentiary hearing.

(ECF No. 4, at pp. 16-17).

### 1. Due Process Claim

Petitioner asserts that the trial court violated his due process rights by giving a *Kazalyn*

instruction regarding first degree murder.  (ECF No. 4, at p. 16-22).  At trial, the state district court

gave the following instruction:

> Premeditation is a design, a determination to kill, distinctly formed in
> the mind at any moment before or at the time of the killing.
> Premeditation need not be for a day, an hour or even a minute.  It may
> be as instantaneous as successive thoughts of the mind.  For if the jury
> believes from the evidence that the act constituting the killing has been
> preceded by and has been the result of a premeditation, no matter how

13

1

rapidly the premeditation is followed by an act constituting the killing,
it is willful, deliberate and premeditated murder.

2

(Exhibit 27, Jury Instruction No. 38).  The premeditation instruction given in petitioner's trial, at

3

Instruction 38, constitutes what is referred to as a *Kazalyn* instruction.  The *Kazalyn* instruction first

4

appeared in Nevada's case law in *Kazalyn v. State*, 108 Nev. 67, 825 P.2d 578 (1992).

5

### a. The *Kazalyn* Instruction was Erroneous

6

The Nevada Supreme Court concluded in *Byford v. State*, 116 Nev. 215, 994 P.2d 700

7

(2000), that the *Kazalyn* instruction erroneously "blur[red] the distinction between first- and second-

8

degree murder" by failing to sufficiently distinguish between the distinct elements of deliberation

9

and premeditation required for a conviction for first-degree murder as opposed to lesser homicide

10

offenses.  *Byford*, 116 Nev. at 234-36, 994 P.2d at 713-14.  The Nevada Supreme Court approved a

11

jury instruction in lieu of the *Kazalyn* instruction that expressly and specifically distinguished

12

between the three separate elements of willfulness, deliberation, and premeditation.  The instruction

13

approved in *Byford* carried forward the concept that premeditation "may be as instantaneous as

14

successive thoughts of the mind."  The *Byford* instruction further stated, however, that "[a] mere

15

unconsidered and rash impulse is not deliberate, even though it includes the intent to kill."  The

16

approved instruction concluded: "A cold, calculated judgment and decision may be arrived at in a

17

short period of time, but a mere unconsidered and rash impulse, even though it includes an intent to

18

kill, is not deliberation and premeditation as will fix an unlawful killing as murder of the first

19

degree."  *Byford*, 116 Nev. at 236-37, 994 P.2d at 714-15.

20

Following the *Byford* decision, the Nevada Supreme Court later held that the giving of a

21

*Kazalyn* instruction does not give rise to a federal due process violation.  *Garner v. State*, 116 Nev.

22

770, 6 P.3d 1013, 1025 (2000), *overruled on other grounds by Sharma v. State*, 118 Nev. 648, 56

23

P.3d 868 (2002).  The Nevada Supreme Court concluded that the *Byford* holding was not a holding

24

of constitutional dimension that must be retroactively applied.  *Id.*

25

26

14

The Ninth Circuit, however, has held that the Nevada Supreme Court's holding in *Garner*, rejecting the federal due process claim, was contrary to clearly established federal law, based entirely upon controlling United States Supreme Court precedent decided prior to petitioner's trial and appeal. *Polk v. Sandoval*, 503 F.3d 903, 909-11 (9th Cir. 2007). "It is clearly established law that, as determined by the [United States] Supreme Court, that a defendant is deprived of due process if a jury instruction 'ha[s] the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind.'" *Polk v. Sandoval*, 503 F.3d at 909-10 (citing and quoting *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979); *Francis v. Franklin*, 471 U.S. 307, 326 (1985); *In re Winship*, 397 U.S. 358 (1970)). In *Polk*, the Ninth Circuit held that "[the petitioner's] federal constitutional right to due process was violated by use of the *Kazalyn* instruction because it relieved the State of its burden of proving every element of first-degree murder beyond a reasonable doubt." *Polk,* 503 F.3d at 909. The Court in *Polk* found that "the Nevada Supreme Court erred by conceiving of the *Kazalyn* instruction issue as purely a matter of state law." *Polk*, 503 F.3d at 911. The Nevada Supreme Court erred in concluding that giving a *Kazalyn* instruction in cases predating *Byford* did not constitute a federal constitutional error. *Id.* Finally, the Court in *Polk* ruled that where a *Kazalyn* instruction is given, the finding of a due process deprivation is subject to harmless error analysis. *Id.* at 911-12.

More recently, the Nevada Supreme Court issued the published opinion in *Nika v. State*, 198 P.3d 839 (Nev. 2008). In *Nika v. State*, the Nevada Supreme Court held that *Byford* announced "a change in state law," rather than a "clarification" of such law, as had been suggested in the *Polk v. Sandoval* decision. *Nika v. State*, 198 P.3d at 849-850, 859. The Nevada Supreme Court found that: "Until *Byford*, we had not required separate definitions for 'willfulness,' 'premeditation,' and 'deliberation' when the jury was instructed on any one of those terms." *Id*. at 849. Stressing that it had previously approved of the *Kazalyn* instruction and rejected challenges to that instruction on the grounds that it failed to distinguish between premeditation and deliberation, the court held that the

*Byford* decision was thus unforeseeable.  *Id*.  The Nevada Supreme Court concluded that the *Kazalyn* instruction therefore correctly reflected Nevada law before the *Byford* decision.  *Id.* at 850.  The Nevada Supreme Court held that, as a matter of due process, the change in the law effected in *Byford* applied to convictions that were not yet final at the time of the change.  *Id*.  On the issue of retroactive application of *Byford* to cases that were final before it was decided, the Nevada Supreme Court held that *Byford* has no retroactive application.  *Id*. at 850-851, 859.

In the instant case, the trial court erred in giving the *Kazalyn* instruction to the jury.  *Polk v. Sandoval*, 503 F.3d at 909.  This Court is, of course, bound by the Ninth Circuit's holding in *Polk v. Sandoval*.  Nevertheless, it should be noted that, even under the holding of *Nika v. State*, the rule announced in *Byford* applies to petitioner's conviction, because *Byford* was decided prior to petitioner's conviction becoming final.  *See Nika*, 198 P.3d at 850.

### b. Harmless Error Analysis

As previously outlined, in the present case, the state district court gave the *Kazalyn* instruction at trial.  (Exhibit 27, at Instruction 38).  The trial court's erroneous use of the *Kazalyn* instruction does not end this Court's inquiry.  As explained in *Polk v. Sandoval*, the Court must now determine whether or not the constitutional error was harmless error.  Petitioner will be entitled to relief only if "'the error had a substantial and injurious effect or influence in determining the jury's verdict.'"  *Polk v. Sandoval*, 503 F.3d at 911 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); *see also Chambers v. McDaniel*, 549 F.3d 1191 (9th Cir. 2008) (addressing issue of harmless error where an erroneous *Kazalyn* instruction was given).

Significant to the issue of harmless error in the instant case, is the fact that the trial court gave the jury a separate instruction, defining the deliberation necessary for first degree murder, in addition to the *Kazalyn* instruction.  (Exhibit 27, Jury Instruction No. 40).  In contrast to the case at bar, in the *Byford* and *Polk* trials, the jury instructions included an erroneous *Kazalyn* instruction, but did not include a separate instruction on the meaning of deliberation, as was given in the instant case.

16

(Compare Exhibits 72 & 73 with Exhibit 27).  In reviewing jury instructions, the court inquires as to whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation. *U.S. v. Garcia-Rivera,* 353 F.3d 788, 791 (9th Cir. 2003) (citing *United States v. Frega,* 179 F.3d 793, 806 n.16 (9th Cir. 1999) (internal citations omitted).  An instruction may not be judged in isolation, "but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (the question is whether an instruction so infected the entire trial that the resulting conviction violated due process).  As such, the giving of an impermissible *Kazalyn* instruction must be weighed against the other instructions and the trial record as a whole.  In the instant case, viewing the totality of the jury instructions, the fact that the court gave a separate instruction defining deliberation makes it more likely that the jury understood the difference between premeditation and deliberation as two separate elements of first degree murder.

Even more significantly, the court looks to the trial court record when determining whether a constitutional error was harmless.  In the instant case, there is overwhelming evidence that petitioner acted with willfulness, deliberation, and premeditation supporting his conviction for first degree murder.  Most salient of these facts is the trial testimony describing petitioner's actions just before murdering the bartender.  Witness Whaley, who was working as a dishwasher at the O'Aces bar when the robbery and murders occurred, testified that petitioner's co-conspirator Lawshawn Levi and the bartender were struggling for control over Levi's shotgun behind the bar, the shotgun went off, and Levi yelled out for petitioner to shoot the bartender.  (Exhibit 8, at p. 92).  Whaley testified that, at the time, petitioner was up on the second floor of the bar.  (*Id.*, at p. 93).

Paul Lawson, who worked as a cook at the bar the night of the robbery and murders, testified at trial that during the robbery, Levi and the bartender were wrestling for control over Levi's shotgun behind the bar, and Levi yelled out, telling petitioner to shoot the bartender.  (Exhibit 8, at p. 127). Petitioner then jumped over the bar, fired one shot while on top of the bar, and fired several more

shots after he was behind the bar, which struck the bartender's back.  (*Id.*, at pp. 127-128).

Petitioner's mask slipped off, revealing his face to Lawson.  (*Id.*, at p. 129).

Additionally, a patron of the bar who was present that night and who had a good view of petitioner's actions, witness Slipich, testified that when Levi yelled out during the struggle with the bartender, she saw petitioner with a handgun, "running around and shooting, and that he "got his target," describing several aimed shots fired by petitioner at the bartender.  (Exhibit 9, at p. 10).

The trial testimony outlined here and many other facts of the crimes committed by petitioner were described as "not disputed" by the Nevada Supreme Court in its order affirming the judgment of conviction.  (Exhibit 37, at pp. 1-2).  On habeas review, the factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  The overwhelming evidence of petitioner's guilt, and the overwhelming evidence of petitioner's deliberation regarding the murder, lead this Court to find that the *Kazalyn* instructional error did not have a substantial or injurious effect or influence on the jury's verdict.  The instructional error was harmless under the *Brecht* harmless error standard, therefore, petitioner is not entitled to habeas relief.

In addition to the overwhelming evidence that petitioner acted with willfulness, deliberation, and premeditation supporting his conviction for first degree murder, there was also uncontested guilt under the theory of felony murder.  At trial, the State proceeded under two theories of first degree murder – one that the murder of the bartender was premeditated and deliberate, and second, that the murder was committed in the course of an enumerated felony.  In Nevada, murder committed during the course of a robbery or burglary is first degree felony murder.  *See* NRS 200.030(1)(b).  The facts gleaned from the trial court record establish that the bartender's murder occurred during the commission of a robbery and burglary.  Petitioner was found guilty of several counts of robbery and one count of burglary while in possession of a firearm.  Petitioner readily admitted under oath that he was guilty of robbery and burglary.  (Exhibit 14, at pp. 38-40).  Petitioner's attorneys also stated that there was evidence supporting petitioner's guilty verdict for the crimes of robbery and burglary.

18

1   (Exhibit 15, at p. 117, 132).  The Nevada Supreme Court determined on direct appeal that the

2   evidence of felony murder in petitioner's case was "indisputable."  (Exhibit 37, at p. 7).  The

3   *Kazalyn* instructional error was harmless because of petitioner's guilt of felony murder was

4   supported by the evidence, and indeed was uncontested.  To summarize, the trial court's erroneous

5   use of the *Kazalyn* instruction was harmless error, because the error did not have a substantial and

6   injurious effect or influence in determining the jury's verdict.  *See Polk v. Sandoval*, 503 F.3d at 911

7   (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  Habeas relief is denied as to petitioner's

8   claims regarding the *Kazalyn* instruction.

9                              **2.  Ineffective Assistance of Counsel Claim**

10           Petitioner alleges that his appellate counsel on direct appeal was ineffective for failing to cite

11   to federal authority regarding his challenge to the *Kazalyn* instruction in post-trial state proceedings.

12   (ECF No. 4, at pp. 17-18).  Petitioner argues that, to the extent that the lack of federal citations may

13   have been insufficient to adequately preserve issues for federal review, appellate counsel was

14   ineffective.  (*Id.*).  Notably, there is no federal authority for the proposition that state appellate

15   counsel is deemed ineffective for failing to "federalize" their arguments in state court proceedings.

16   Moreover, to the extent that petitioner argues that counsel failed to preserve the *Kazalyn* instruction

17   issue for federal review, the fact that this Court has considered the *Kazalyn* argument on the merits

18   precludes petitioner's claim of ineffective assistance of counsel.  The standard for ineffective

19   assistance of counsel claims was discussed earlier in this order.  Petitioner has failed to show that

20   counsel's performance fell below an objective standard of reasonableness under prevailing norms.

21   Petitioner also has not satisfied the prejudice prong of the *Strickland* analysis, as he has not shown

22   that, but for the alleged errors of counsel, the outcome of the proceedings would have been different.

23   *See Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).

24           Petitioner also alleges that appellate counsel was ineffective for failing to raise an equal

25   protection claim regarding the *Kazalyn* instruction.  (ECF No. 4, at p. 19).  Petitioner alleges that he

26

1   was denied equal protection "when he was refused the benefit of adequate instruction which was

2   afforded to those tried both before and after him."  (ECF No. 4, at pp. 16-17, 19).  Petitioner

3   provides no authority for the proposition that the giving of an erroneous *Kazalyn* instruction

4   implicates petitioner's equal protection rights.  Appellate counsel is not ineffective for failing to raise

5   meritless issues, and counsel has no constitutional duty to raise every non-frivolous issue requested

6   by the client.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  Petitioner has met neither prong of the

7   *Strickland* analysis.  Habeas relief is denied as to petitioner's claim of ineffective assistance of

8   counsel in Ground Three.  In summary, for the reasons discussed in section (B) of this order, the

9   Court denies habeas relief as to the entirety of Ground Three.

10          **C. Ground Four**

11          In Ground Four, petitioner alleges that his constitutional rights were violated because of an

12   incorrect burglary instruction (Jury Instruction No. 12), and that his counsel was ineffective for

13   failing to object to the instruction and raise the issue on direct appeal.  (ECF No. 4, at pp. 23-26).  By

14   order filed March 15, 2010, this Court ruled that the substantive portion of Ground of Four of the

15   federal petition was procedurally defaulted in state court on independent and adequate grounds, and

16   that petitioner failed show cause and prejudice to excuse the procedural bar.  This Court further ruled

17   that the portion of Ground Four that pertains to the ineffective assistance of counsel is allowed to

18   proceed.  (ECF No. 29, at pp. 11-13).  Jury Instruction No. 12 reads as follows:

19              You are instructed that the offense of Burglary is complete if you find
                that the defendant entered a building with the intent to commit a felony
20              therein.  If you find that the defendant committed a felony subsequent
                to entering the building as stated above you may find that the
21              defendant has committed two separate offenses and convict on both
                burglary and murder.
22

23   (Exhibit 27, Jury Instruction No. 12).  On appeal from the denial of his state habeas petition, the

24   Nevada Supreme Court considered petitioner's ineffective assistance of counsel claim that counsel

     failed to object to Jury Instruction No. 12.  (Exhibit 71, at pp. 4-5).  The Nevada Supreme Court
25
     rejected petitioner's ineffective assistance of counsel claim, ruling that petitioner "failed to
26

1   demonstrate any reasonable probability that had counsel raised the issue at trial, the district court

2   would have altered the instruction." (*Id.*, at p. 5).  The Nevada Supreme Court ruled that "under the

3   facts of this case the instruction was, as a matter of law, correct." (*Id.*).  The Nevada Supreme Court

4   further ruled that appellate counsel was not ineffective for failing to challenge Jury Instruction No.

5   12 on appeal, because even if the claim had been raised on appeal, a different result was not

6   reasonably probable.  (*Id.*, at p. 8).

7          To obtain federal habeas relief based on an improper jury instruction, petitioner must

8   establish that the instruction so infected the entire trial that the resulting conviction violates due

9   process. *Masoner v. Thurman*, 996 P.3d 1003, 1006 (9th Cir. 1993); *Estelle v. McGuire*, 502 U.S. 62,

10  72 (1991); *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977).  In reviewing jury instructions, the court

11  inquires as to whether the instructions as a whole were misleading or inadequate to guide the jury's

12  deliberation. *U.S. v. Garcia-Rivera,* 353 F.3d 788, 791 (9th Cir. 2003) (citing *United States v. Frega,*

13  179 F.3d 793, 806 n.16 (9th Cir. 1999) (internal citations omitted).  An instruction may not be judged

14  in isolation, "but must be considered in the context of the instructions as a whole and the trial

15  record." *Id.*  Furthermore, jurors are presumed to follow the instructions that they are given.  *U.S. v.*

16  *Olano,* 507 U.S. 725, 740 (1993).  Earlier in this order, the Court has outlined the proper standards

17  for ineffective assistance of counsel claims under *Strickland* analysis.

18         This Court has reviewed Jury Instruction No. 12, as well as the other jury instructions given

19  in petitioner's criminal trial.  Petitioner has not established that the instruction so infected the entire

20  trial that the resulting conviction violates due process.  Had counsel objected or appellate counsel

21  raised this issue on direct appeal, a challenge to Jury Instruction No. 12 would have had no merit.

22  Petitioner has failed to demonstrate that either trial or appellate counsel's performance fell below an

23  objective standard of reasonableness under prevailing norms.  Petitioner also has not satisfied the

24  prejudice prong of the *Strickland* analysis, as he has not shown that, but for the alleged errors of

25  counsel, the outcome of the proceedings would have been different.  *See Williams v. Taylor,* 529

26

1    U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).  Petitioner has failed to meet his

2    burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an

3    unreasonable application of, clearly established federal law, as determined by the United States

4    Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of

5    the evidence presented in the state court proceeding.  This Court denies habeas relief as to Ground

6    Four.

7             **D.  Ground Five**

8             In Ground Five, petitioner alleges that his constitutional rights were violated due to the trial

9    court's failure to record bench conferences during trial, and that his counsel was ineffective for

10   failing to object at trial and raise the issue on direct appeal.  (ECF No. 4, at pp. 26-30).  By order

11   filed March 15, 2010, this Court ruled that the substantive portion of Ground of Five of the federal

12   petition was procedurally defaulted in state court on independent and adequate grounds, and that

13   petitioner failed show cause and prejudice to excuse the procedural bar.  This Court further ruled that

14   the portion of Ground Five that pertains to the ineffective assistance of counsel is allowed to

15   proceed.  (ECF No. 29, at pp. 11-13).

16            In raising this claim in the federal petition, petitioner relies on Nevada Supreme Rule 250,

17   Procedure in Capital Proceedings, which provides that counsel for both parties may consent for the

18   court to conduct proceedings outside the presence of the jury or court report, but that if objection is

19   made or any issue resolved in an unrecorded proceeding, the court shall ensure that the objection and

20   resolution are made part of the record at the next recorded proceeding.  Nevada SCR 250(5)(a).

21   Petitioner alleges the procedure called for in Nevada SCR 250 was not followed in his case.

22   Petitioner cites entirely to Nevada state law in raising this issue in his federal petition.  As an initial

23   matter, it appears that Ground Five raises only a state issue, and not a federal issue.  Unless an issue

24   of federal constitutional or statutory law is implicated by the facts presented, there is no cognizable

25   claim under federal habeas corpus.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

26

22

1      However, assuming that Ground Five does raise a federal issue, the Court goes on to analyze

2   the claim.  In reviewing petitioner's claim, the Nevada Supreme Court ruled:

3              Finally, Maxey asserts that the district court's failure to record all
              bench conferences violated SCR 250(5)(a) and that his trial counsel
4             was ineffective for failing to raise the issue.  A capital defendant does
              not have an absolute right to have trial proceedings recorded.  Further,
5             "[t]he mere failure to make a record of a portion of the proceedings . . .
              is not grounds for reversal."  Rather, a defendant "must show that the
6             subject matter of the omitted portions of the record was so significant
              that this court cannot meaningfully review his claims of error."
7
              The record reveals that there were unrecorded bench conferences, but
8             several of them were later placed on the record.  Maxey made no
              specific factual allegations regarding the content of the remaining
9             conferences, and he failed to adequately explain how he was
              prejudiced or how failure to record these conferences precluded
10            adequate appellate review.  Therefore, we conclude that the district
              court did not err in summarily denying this claim.
11
12   (Exhibit 71, at pp. 6-7) (footnotes and citations omitted).  The Nevada Supreme Court ruled that

13   because petitioner was not sentenced to death and because there was no reasonable probability that a

14   claim regarding the unrecorded bench conferences would have had resulted in a different outcome or

15   would have succeeded on appeal, counsel was not ineffective.  (*Id.*, at p. 8).

16      In the federal petition, petitioner makes no showing of how he was prejudiced by the alleged

17   unrecorded bench conferences.  The factual findings of the Nevada state courts are presumed correct.

18   28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the Nevada Supreme

19   Court's decision was contrary to, or involved an unreasonable application of, clearly established

20   federal law, as determined by the United States Supreme Court, or that it was based on an

21   unreasonable determination of the facts in light of the evidence presented in the state court

22   proceeding.  The Court denies habeas relief with respect to Ground Five.

**IV.  Certificate of Appealability**

23      In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28

24   U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951

25   (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a

26

23

petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court therefore denies petitioner a certificate of appealability.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

Dated this 31st day of January, 2012.

Edward C. Reed.

UNITED STATES DISTRICT JUDGE

24